**No. 25-1776**

In The

# United States Court of Appeals
**For The Sixth Circuit**

**Jerreece Noel,**

*Plaintiff-Appellant,*

**v.**

**Challenge Manufacturing Holdings, Inc.,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:23-cv-12982

## Appellee Challenge Manufacturing Holdings, Inc.'s Brief on Appeal

Matthew M. O'Rourke
Adam J. Walker
MILLER JOHNSON
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI 49503
616.831.1700
orourkem@millerjohnson.com
walkera@millerjohnson.com
*Counsel for Defendant-Appellee*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 6 Cir. R. 26.1, Challenge Manufacturing Holdings, Inc. makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation: **No**.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome: **No**.

 /s/ *Adam J. Walker*          Date: March 4, 2026
Adam J. Walker

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES .................................................................... vii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................... xii

STATEMENT OF ISSUES ...................................................................... 1

SUMMARY OF THE CASE ..................................................................... 3

STATEMENT OF THE CASE ................................................................... 6

I.      CHALLENGE AND JERREECE NOEL. ....................................... 6

II.     CHALLENGE ALLOWS MS. NOEL TO LEAVE A JOB
        FAIR EARLY SO SHE CAN SPEND TIME WITH HER
        FAMILY…. .......................................................................... 6

        A.      The Pontiac HR team attends a June 2022 job fair. ............................ 6

        B.      Ms. Noel complains that the photographer arrived at the
                job fair after she left. ........................................................... 7

III.    CHALLENGE PROMOTES MS. NOEL. ....................................... 9

IV.     CHALLENGE REQUIRES MS. NOEL TO MOVE HER
        DESK……… .......................................................................... 10

V.      CHALLENGE PROMPTLY INVESTIGATES MS. NOEL'S
        COMPLAINTS ABOUT HER WORKPLACE. ............................... 11

        A.      Challenge investigates Ms. Noel's allegation that Ms.
                Brainard yelled at her. ........................................................... 11

        B.      Challenge investigates Ms. Noel's complaint of alleged
                race discrimination. ............................................................... 12

        C.      Challenge investigates Ms. Noel's claim about her
                coworkers' jokes. ................................................................... 14

Page

VI.   CHALLENGE IDENTIFIES DEFICIENCIES IN MS. NOEL'S
      PERFORMANCE AND PUTS HER ON A PERFORMANCE
      IMPROVEMENT PLAN. ...................................................................15

VII.  MS. NOEL SUBMITS A REBUTTAL TO HER
      PERFORMANCE REVIEW. ..............................................................16

VIII. MS. NOEL RESIGNS FROM HER EMPLOYMENT WITH
      CHALLENGE. ..................................................................................18

IX.   PROCEDURAL HISTORY. ..............................................................18

SUMMARY OF THE ARGUMENT ................................................................20

I.    MS. NOEL FAILED TO STATE *PRIMA FACIE* CASES OF
      RACE AND SEX DISCRIMINATION. .............................................20

II.   MS. NOEL FAILED TO STATE A *PRIMA FACIE* CASE OF
      RETALIATION. .................................................................................21

III.  CHALLENGE'S LEGITIMATE AND NON-
      DISCRIMINATORY REASONS FOR ITS ACTIONS WERE
      NOT A PRETEXT FOR DISCRIMINATION. ...................................22

IV.   MS. NOEL FAILED TO STATE A *PRIMA FACIE* CASE OF
      A HOSTILE WORK ENVIRONMENT. ...........................................22

STANDARD OF REVIEW ..............................................................................24

ARGUMENT………..........................................................................................24

I.    MS. NOEL FAILED TO PROVE A *PRIMA FACIE* CASE OF
      RACE DISCRIMINATION. ..............................................................24

      A.    Ms. Noel did not suffer an adverse employment action. ....................25

            1.    Ms. Noel's PIP was not an adverse action. ..............................26

            2.    Challenge did not constructively discharge Ms.
                  Noel. ...............................................................................26

iv

Page

II.  MS. NOEL FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF GENDER DISCRIMINATION. ...................................................29

III.  MS. NOEL FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION. .....................................................................30

    A.  Ms. Noel did not establish an adverse employment action. ...........................................................................................31

    B.  Ms. Noel did not establish a causal connection between any alleged adverse action and her protected activity..........................32

IV.  MS. NOEL FAILED TO ESTABLISH THAT CHALLENGE'S LEGITIMATE, NON-DISCRIMINATORY REASONS FOR ITS ACTIONS WERE PRETEXT FOR DISCRIMINATION AND RETALIATION. ....................................................................33

V.  MS. NOEL FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF A RACIALLY HOSTILE WORK ENVIRONMENT. ...................................................................36

    A.  Ms. Noel did not show that any alleged harassment was race-based. .....................................................................................36

    B.  Ms. Noel did not show that the allegedly hostile work environment was objectively hostile. ...................................................37

        1.  Ms. Brainard's offer to allow Ms. Noel to leave the job fair early is not objectively hostile. ......................................39

        2.  Ms. Brainard's alleged directive to not hire applicants from Pontiac is not objectively hostile. ...................40

        3.  Ms. Brainard's yelling at Ms. Noel was not objectively hostile. .................................................................41

        4.  Challenge did not subject Ms. Noel to an objectively hostile workplace when it initially denied her request to work remotely.........................42

Page

5.   Ms. Noel's coworkers did not create a subjectively
or objectively hostile work environment when they
made a joke in her presence. ....................................................43

6.   The district court properly considered the totality
of the alleged hostile acts. ........................................................44

C.   The allegedly hostile environment was neither severe nor
pervasive. ...................................................................................45

D.   There is no genuine issue of fact that Challenge promptly
investigated Ms. Noel's complaints of harassment. ...........................46

CONCLUSION…….....................................................................................49

CERTIFICATE OF COMPLIANCE ................................................................ xiii

CERTIFICATE OF SERVICE ........................................................................xiv

ADDENDUM……… .....................................................................................xv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arendale v. City of Memphis*,
519 F.3d 587 (6th Cir. 2008) ...................................................................40

*Bacon v. Honda of America Mfg., Inc.*,
192 F. App'x 337 (6th Cir. 2006) ...........................................................26

*Banks v. Bosch Rexroth Corp.*,
610 F. App'x 519 (6th Cir. 2015) ...........................................................34

*Batuyong v. Gates*,
337 F. App'x 451 (6th Cir. 2009) ...........................................................41

*Baughman v. Battered Women, Inc.*,
211 F. App'x 432 (6th Cir. 2006) ...........................................................27

*Berry v. Experian Information Solutions, Inc.*,
115 F.4th 528 (6th Cir. 2024) .................................................................25

*Bormuth v. Jackson Cty.*,
870 F.3d 494 (6th Cir. 2017) (en banc) .................................................28

*Boxill v. O'Grady*,
935 F.3d 510 (6th Cir. 2019) (Section 1981 and Title VII) ..................31

*Cash-Darling v. Recycling Equipment, Inc.*,
62 F.4th 969 (6th Cir. 2023) .............................................................28, 35

*Clark v. United Parcel Serv., Inc.*,
400 F.3d 341 (6th Cir. 2005) ...................................................................47

*Clay v. United Parcel Serv., Inc.*,
501 F.3d 695 (6th Cir. 2007) ...................................................................45

*Collette v. Stein-Mart, Inc.*,
126 F. App'x 678 (6th Cir. 2005) .......................................................23, 48

*Cooper v. City of North Olmsted*,
795 F.2d 1265 (6th Cir. 1986) .................................................................32

*Dixon v. Clem*,
   492 F.3d 665 (6th Cir. 2007) ...............................................................24

*Dubay v. Wells*,
   506 F.3d 422 (6th Cir. 2007) ...............................................................40

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)...................................................................... 23, 45

*Frier-Heckler v. McDonough*,
   No. 22-3233, 2023 WL 2378507 (6th Cir. Mar. 7, 2023) ..................44

*Giron v. Tyco Elecs. Corp.*,
   762 F. App'x 233 (6th Cir. 2019) ................................................ 20, 26

*Grace v. USCAR*,
   521 F.3d 655 (6th Cir. 2008) ...............................................................45

*Halfacre v. Home Depot, U.S.A., Inc.*,
   221 F. App'x 424 (6th Cir. 2007) ........................................................31

*Hamilton v. General Elec. Co.*,
   556 F.3d 428 (6th Cir. 2009) ...............................................................32

*Hanover Ins. Co. v. American Engineering Co.*,
   33 F.3d 727 (6th Cir. 1994) .................................................................24

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993)................................................................... 23, 37-38

*Harrison v. Olde Fin. Corp.*,
   572 N.W.2d 679 (1997) ........................................................................29

*Hrdlicka v. Gen. Motors, LLC*,
   63 F.4th 555 (6th Cir. 2023) ................................................................34

*Imwalle v. Reliance Medical Products, Inc.*,
   515 F.3d 531 (6th Cir. 2008) ......................................................... 22, 34

*Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*,
   176 F.3d 921 (6th Cir. 1999) ...............................................................29

*Jackson v. Quanex Corp.*,
191 F.3d 647 (6th Cir. 1999) ........................................................................48

*Kienzle v. Gen. Motors, LLC*,
903 F. Supp.2d 532 (E.D. Mich. 2012) .........................................................31

*Kuhn v. Washtenaw Cty.*,
709 F.3d 612 (6th Cir. 2013) ........................................................................31

*Laster v. City of Kalamazoo*,
746 F.3d 714 (6th Cir. 2014) ..................................................................24, 31

*Logan v. Denny's, Inc.*,
259 F.3d 558 (6th Cir. 2001) ........................................................................26

*Lytle v. Malady*,
579 N.W.2d 906 (Mich. 1998)......................................................................34

*McKelvey v. Secretary of U.S. Army*,
450 F. App'x 532 (6th Cir. 2011) ....................................................... 20, 27-28

*Mickey v. Zeidler Tool and Die Co.*,
516 F.3d 516 (6th Cir. 2008) ........................................................................32

*Montell v. Diversified Clinical Servs., Inc.*,
757 F.3d 497 (6th Cir. 2014) ........................................................................33

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)................................................................................ 25-26

*Nance v. Goodyear Tire & Rubber Co.*,
527 F.3d 539 (6th Cir. 2008) ........................................................................26

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998)........................................................................................36

*Peters v. Lincoln Elec. Co.*,
285 F.3d 456 (6th Cir. 2002) ........................................................................34

*Phillips v. UAW Int'l*,
854 F.3d 323 (6th Cir. 2017) ..................................................................36, 38

*Preferred Automotive Sales Inc. v. Kocis*,
  60 F. App'x. 583 (6th Cir. 2003) ........................................................................25

*Primes v. Reno*,
  190 F.3d 765 (6th Cir. 1999) ............................................................................26

*Randolph v. Ohio Dept. of Youth Servs.*,
  453 F.3d 724 (6th Cir. 2006) ............................................................................38

*Seeger v. Cincinnati Bell Tel. Co.*,
  681 F.3d 274 (6th Cir. 2012) ............................................................................34

*Simmons v. Augustine*,
  No. 08-CV-14546, 2009 WL 2222693 (E.D. Mich. July 22, 2009)...................32

*Smith v. Bath Iron Works Corp.*,
  943 F.2d 164 (1st Cir. 1991)..............................................................................28

*Smith v. City of Toledo, Ohio*,
  13 F.4th 508 (6th Cir. 2021) .............................................................................24

*Smith v. Leggett Wire Co.*,
  220 F.3d 752 (6th Cir. 2000) ............................................................................45

*Smith v. Rock-Tenn Servs., Inc.*,
  813 F.3d 298 (6th Cir. 2016) ............................................................................38

*Sommer v. Davis*,
  317 F.3d 686 (6th Cir. 2003) ............................................................................25

*Strickland v. City of Detroit*,
  995 F.3d 495 (6th Cir. 2021) ..................................................................... 36-37

*Swenson v. Potter*,
  271 F.3d 1184 (9th Cir. 2001) ..........................................................................48

*Talley v. Family Dollar Stores of Ohio, Inc.*,
  542 F.3d 1099 (6th Cir. 2008) ..........................................................................28

*Tareco Properties, Inc. v. Morriss*,
  321 F.3d 545 (6th Cir. 2003) ............................................................................40

*Torres v. Chad Youth Enhancement Center*,
  No. 3:08-CV-0636, 2009 WL 2850709 (M.D. Tenn. Sept. 1, 2009) .................27

*Trepka v. Bd. of Educ.*,
  28 F. App'x 455 (6th Cir. 2002) ........................................................................41

*Wasek v. Arrow Energy Servs., Inc.*,
  682 F.3d 463 (6th Cir. 2012) ............................................................................21

*Williams v. CSX Transp. Co., Inc.*,
  643 F.3d 502 (6th Cir. 2011) ............................................................................45

*Williams v. Gen. Motors Corp.*,
  187 F.3d 553 (6th Cir. 1999) ............................................................................44

*Wyatt v. Nissan North America, Inc.*,
  999 F.3d 400 (6th Cir. 2021) ............................................................................46

**Statutes**

Title VII of the Civil Rights Act of 1964...........................................................*passim*

42 U.S.C. § 1981 ................................................................................................*passim*

Elliott-Larsen Civil Rights Act ...........................................................18, 24, 31, 34

**Other Authorities**

Fed R. Civ. P. 56(c)........................................................................................24, 43

## **STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Challenge Manufacturing Holdings, Inc. requests oral argument. This appeal presents a question regarding the threshold that a plaintiff must cross to demonstrate that an alleged employer action constitutes an adverse employment action for the purposes of establishment of a *prima facie* case for unlawful disparate treatment under Title VII, Section 1981, and the Elliott-Larsen Civil Rights Act.

## STATEMENT OF ISSUES

1.      Whether the district court properly granted Appellee summary judgment regarding Appellant's hostile work environment claims because Appellant failed to establish a *prima facie* case regarding the existence of race-based, severe or pervasive harassment, and regarding Appellee's alleged failure to remedy the alleged harassment.

2.      Whether the district court properly granted Appellee summary judgment regarding Appellant's race and gender discrimination claims because Appellant failed to establish a *prima facie* case regarding the existence of an adverse employment action and regarding whether she was treated less favorably than a similarly-situated employee.

3.      Whether the district court properly granted Appellee summary judgment regarding Appellant's retaliation claims because Appellant failed to establish a *prima facie* case regarding the existence of an adverse employment action and regarding the existence of a causal connection between her protected activity and an alleged adverse employment action.

4.      If necessary, whether the district court properly granted Appellee summary judgment regarding Appellant's discrimination and retaliation claims because Appellant failed to demonstrate a genuine issue of material fact that

Appellee's legitimate, non-discriminatory and non-retaliatory reasons for its actions were pretext for unlawful discrimination and retaliation.

## <u>SUMMARY OF THE CASE</u>

Appellant Jerreece Noel alleges that her former employer, Challenge Manufacturing Holdings, Inc. ("Challenge") discriminated against her, subjected her to a hostile work environment, and retaliated against her. However, after engaging in significant discovery, she had no evidence – only her subjective beliefs – to support her claims. The district court properly concluded that Ms. Noel's feelings and subjective beliefs were insufficient to show a genuine issue of fact and granted summary judgment in favor of Challenge.

On appeal, Ms. Noel argues, on the one hand, that the district court made improper credibility decisions that caused it to "usurp[] the role of the jury." (Jerreece Noel's Brief on Appeal, p. 16). And yet, she wants this Court to engage in the same analysis, asking it to credit her "powerful testimony" while submitting as purported fact her counsel's characterization of her emotional demeanor at her deposition. *Id.* at p. 14.

All of this is nothing more than a feeble attempt to distract from the complete lack of evidence that supports Ms. Noel's *prima facie* cases. The undisputed evidence in the record supports the district court's grant of Challenge's motion for summary judgment that this Court should affirm for the following reasons:

First, Ms. Noel cannot show a genuine dispute of material fact on her race and gender discrimination claims. She appears to have abandoned on appeal any argument that she suffered an adverse employment action, which itself is fatal to her discrimination claims. Nonetheless, there is no genuine dispute of fact that: (1) Ms. Noel's performance improvement plan ("PIP") was not an adverse employment action, because Challenge did not simultaneously reduce her pay or benefits, demote her, issue her a corrective action, or take any other adverse action; (2) Ms. Noel voluntarily resigned from her employment after being on a leave of absence for almost a month, and her work conditions at the time of her resignation were not so intolerable that they forced her to quit; and (3) Ms. Noel failed to identify any individual who Challenge treated better after experiencing similar performance deficiencies.

Second, Ms. Noel cannot show a genuine issue of material fact on her retaliation claim. Again, Challenge did not subject Ms. Noel to an adverse employment action – an essential element of a retaliation claim. And even if it did, Ms. Noel did not present any evidence of a causal connection between her protected activity and any adverse action.

Third, Ms. Noel cannot show a genuine issue of material fact that Challenge subjected her to a racially hostile work environment. Ms. Noel claimed that her supervisor treated her poorly and that her co-workers made fun of her. Even

if true, this conduct does not give rise to an actionable hostile work environment because: (1) it was not based on or connected to her race; (2) was neither severe nor pervasive; and (3) Challenge immediately investigated each of Ms. Noel's complaints and addressed her concerns about her work environment.

Challenge respectfully requests that the Court affirm the district court's order and judgment.

5

## STATEMENT OF THE CASE

### I.    CHALLENGE AND JERREECE NOEL.

Challenge manufactures and supplies parts to automotive manufacturers.  Challenge hired Ms. Noel as a Talent Acquisition Specialist ("TA Specialist") on February 14, 2022.  (Plaintiff Deposition Transcript, RE 19-2 at 30:10-15, Page ID # 185).  She worked at the Pontiac, Michigan plant and reported to Cheryl Brainard (HR Manager, Pontiac Plant).  (New Hire Offer Letter, RE 19-3, Page ID ## 415).  As a TA Specialist, Ms. Noel recruited candidates to work at the Pontiac plant.  (Plaintiff Deposition Transcript, RE 19-2 at 32:14-36:12, Page ID ## 187-191).

### II.    CHALLENGE ALLOWS MS. NOEL TO LEAVE A JOB FAIR EARLY SO SHE CAN SPEND TIME WITH HER FAMILY.

#### A.    The Pontiac HR team attends a June 2022 job fair.

In June 2022, Ms. Noel, Iris Kote (TA Specialist), and Jackson Mahle (HR Generalist) – all members of the Pontiac HR team – attended a job fair at a hotel in Sterling Heights, Michigan.  (Plaintiff Deposition Transcript, RE 19-2 at 54:19-55:16, Page ID ## 209-210).  Challenge received almost no interest from attendees at the sparsely-attended fair. (Brainard Deposition Transcript, RE 19-4 at 16:10-14, Page ID # 437).

During the fair, Ms. Kote called Ms. Brainard and told her about the lack of interest.  *Id.* at 17:1-3, Page ID # 438.  Because the team was not busy, Ms.

Brainard decided that the entire team did not need to stay at the fair, so she told Ms. Kote to tell Ms. Noel that Ms. Noel could go home if she wanted. *Id.* at 15:25-16:22, Page ID ## 436-437.  Ms. Brainard offered to let Ms. Noel leave early, because Ms. Noel was the least senior TA Specialist at the event, *id.* at 20:6-12, Page ID # 441, and Ms. Brainard thought Ms. Noel would appreciate the opportunity to leave early and spend time with her young family.  (Plaintiff Deposition Transcript, RE 19-2 at 64:14-17, Page ID # 219).  Ms. Kote relayed the message to Ms. Noel, who left the fair.  *Id.* at 59:9-17, Page ID # 214.

After Ms. Noel departed, a Challenge photographer arrived to take photos of the recruiting event.  Neither Ms. Brainard, nor Ms. Kote, nor Mr. Mahle knew that Challenge's corporate office had scheduled a photographer to attend. (Brainard Deposition Transcript, RE 19-4 at 17:20-21, Page ID # 438; Kote Deposition Transcript, RE 19-5 at 14:22-15:1, Page ID # 493; Mahle Deposition Transcript, RE 19-6 at 15:2-4, Page ID # 529).  No actual candidates met with Challenge while the photographer was at the event, so he photographed Ms. Kote and the hotel manager (a Black woman) in front of a Challenge sign.  (Job Fair Photograph, RE 19-7, Page ID # 585).

**B.    Ms. Noel complains that the photographer arrived at the job fair after she left.**

Sometime after the job fair, Ms. Brainard met with Ms. Kote and Ms. Noel. (Plaintiff Deposition Transcript, RE 19-2 at 61:23-67:3, Page ID ## 216-222).

Ms. Noel asked Ms. Brainard why a photographer arrived at the event after she left. *Id.* at 65:11-25, Page ID # 220.  Ms. Brainard said that she did not know Challenge scheduled the photographer to attend.  *Id.* at 66:10-13, Page ID # 221.

On Friday, July 1, 2022, Ms. Noel emailed Ken Savage (Vice President of HR) and Heather Daniels (Director of Human Resources).  (July Complaint, RE 19-8, Page ID ## 589-590).  Ms. Noel claimed that Ms. Brainard subjected her to "unfair treatment," because Ms. Brainard allowed Ms. Noel to leave the job fair before the photographer (about whom Ms. Brainard did know) arrived.  *Id.*

Mr. Savage responded to Ms. Noel's email within 45 minutes, confirmed that Challenge treats its employees fairly and with respect, and assured Ms. Noel that Challenge would investigate her allegations after the July 4 holiday weekend. *Id.* at Page ID # 588.  Ms. Noel responded, "I completely understand" and wished Mr. Savage "a great holiday weekend."  *Id.* at Page ID ## 587-588.

Mr. Savage, who worked in Grand Rapids, Michigan, traveled to the Pontiac plant and met with employees, including Ms. Noel.  (Savage Declaration, RE 19-9 at ¶ 5, Page ID # 594).  Mr. Savage did not discover any evidence that Ms. Brainard knew that a photographer planned to attend the job fair or that Ms. Brainard intentionally allowed Ms. Noel to leave early so that she would not be in photographs.  *Id.* at ¶¶ 5-6.  Mr. Savage told Ms. Noel that he determined that Ms.

8

Brainard did not intentionally send Ms. Noel home early to exclude her from the photograph. *Id*. at ¶ 8.

## III. CHALLENGE PROMOTES MS. NOEL.

In September 2022, Ms. Brainard recommended that Challenge promote Ms. Noel to an open HR Generalist position in the Pontiac plant. (Brainard Deposition Transcript, RE 19-4 at 41:14-42:11, Page ID ## 462-463). Ms. Brainard offered the job to Ms. Noel via text message, who accepted almost immediately: "Without hesitation, I would love the opportunity!" (Promotion Acceptance, RE 19-11, Page ID # 605). The promotion, including an annual salary increase from $65,000 to $70,000, went into effect on October 24, 2022. (Promotion Letter, RE 19-12, Page ID # 607; Plaintiff Deposition Transcript, RE 19-2 at 40:9-12, Page ID # 195).

As an HR Generalist, Challenge expected Ms. Noel to track Challenge's unionized plant floor workers' attendance. (Mahle Deposition Transcript, RE 19-6 at 29:23-30:17, Page ID ## 543-544). This required her prompt attention to attendance violations, because the collective bargaining agreement that applied to the plant workers allowed Challenge to discipline members of the bargaining unit only if it gave them timely notice. (Savage Declaration, RE 19-9 at ¶ 11, Page ID # 595).

9

## IV. CHALLENGE REQUIRES MS. NOEL TO MOVE HER DESK.

As part of the promotion, Challenge instructed Ms. Noel to move her desk from the TA area to the HR Generalist area of the HR office. (Plaintiff Deposition Transcript, RE 19-2 at 127:15-128:15, Page ID ## 282-283; Brainard Deposition Transcript, RE 19-4 at 22:1-13, Page ID # 443; Office Map, RE 19-15, Page ID # 617). Jason Heyboer (HR Director and Ms. Brainard's supervisor) instituted this requirement, because it allowed the HR Generalists to collaborate with each other. (Heyboer Investigation Notes, RE 19-13, Page ID # 611).

Ms. Noel objected. Instead of moving to the area with the other HR Generalists, she asked on November 4 "to move to the office in the hallway or remain at this desk by the window." (November Complaint, RE 19-14, Page ID # 615).

That same day, Ms. Noel confronted Ms. Brainard in the lobby as Ms. Brainard was leaving for the day. They returned to the office, where Ms. Brainard told Ms. Noel that she could either move her desk to the HR Generalist area or use an office in the hallway between the HR Department and the plant floor. If Ms. Noel chose the hallway office, Challenge would require her to serve as the HR liaison for employees on the plant floor, because of the office's proximity to the floor. (Plaintiff Deposition Transcript, RE 19-2 at 143:20-144:23, Page ID ## 298-299).

Ms. Noel eventually relocated her workspace to a desk near Ms. Brainard's office. (Plaintiff Deposition Transcript, RE 19-2 at 147:3-8, Page ID # 302). After she moved, Ms. Brainard noticed that Ms. Noel was routinely late to work and had attendance problems. (Brainard Deposition Transcript, RE 19-4 at 12:11-13, 36:14-18, Page ID ## 433, 457).

Ms. Brainard planned to address Ms. Noel's attendance and punctuality with her, but before she did, Ms. Noel filed a complaint with the Michigan Department of Civil Rights ("MDCR"). *Id.* at 36:11-23, Page ID # 457. Mr. Heyboer instructed Ms. Brainard to not address Ms. Noel's attendance with her so that she would not file a (non-meritorious) retaliation charge. *Id.*

## V. CHALLENGE PROMPTLY INVESTIGATES MS. NOEL'S COMPLAINTS ABOUT HER WORKPLACE.

### A. Challenge investigates Ms. Noel's allegation that Ms. Brainard yelled at her.

At 3:27 p.m. on Friday, November 4 (the same day that Ms. Brainard told Ms. Noel that she needed to move her workspace), Ms. Noel emailed Ms. Brainard and copied Mr. Savage, Mr. Heyboer, and Doug Bradley (President/CEO). (November Complaint, RE 19-14, Page ID # 614). She objected to moving her workspace and claimed that Ms. Brainard shouted at her to "[t]ake the rest of the day off to decide what you want to do." *Id.* Ms. Noel said she "would like this matter

11

addressed when possible" and claimed it was "not the first time" Ms. Brainard yelled at her. *Id.*

On Wednesday, November 9, Mr. Heyboer went to the Pontiac plant to investigate Ms. Noel's allegations. (Heyboer Investigation Notes, RE 19-13, Page ID # 611). He met individually with Mr. Mahle and Nichole Oleksiak (HR Generalist), who each told him that Ms. Brainard did not treat Ms. Noel unprofessionally or with hostility. *Id.*

Mr. Heyboer then met with Ms. Noel. She complained about moving workspaces and being sent home from the June job fair before the photographer arrived. *Id.* Mr. Heyboer told Ms. Noel that he – not Ms. Brainard – decided to group the HR Generalists' workspaces. And he concluded that "[t]hroughout our conversation it became clear to me that she was holding on to past perceived slights and not able to move on from them." *Id.* He "did [his] best to assure her that [Challenge] held her in high regard[.]" *Id.* At the end of the conversation, Ms. Noel "seemed to be in a better place and was willing to move forward." *Id.*

**B.      Challenge investigates Ms. Noel's complaint of alleged race discrimination.**

Ms. Noel emailed Mr. Heyboer again on December 13. She wrote: "I appreciate you for taking the time to talk with me last month," but that she "can't help but to feel uncomfortable in the office at times. This feeling is stemming from me being treated unfairly and discriminated against due to my race by my manager

12

Cheryl." (December Complaint, RE 19-16, Page ID ## 619-620). This email was the first time that Ms. Noel complained to anyone at Challenge that she believed she was treated differently because of her race. (Plaintiff Deposition Transcript, RE 19-2 at 167:17-168:9, Page ID ## 322-323).

Mr. Heyboer responded to Ms. Noel on December 16, and they met on December 22. (Heyboer Investigation Notes, RE 19-13, Page ID # 611; December Complaint, RE 19-16, Page ID # 619). "[T]he conversation was much the same as the previous one" and "[n]othing new had happened since our previous conversation[.]" (Heyboer Investigation Notes, RE 19-13, Page ID # 611). Mr. Heyboer then asked Ms. Noel "if she had experienced anything else that we hadn't previously discussed," and she said she had not. *Id.* They "ended the conversation cordially and [Mr. Heyboer] let her know [he] would discuss with her coworkers as she suggested." *Id.*

Mr. Heyboer spoke with Mr. Mahle on December 28, who said that "nothing was inappropriate or that he would consider a hostile environment or discriminatory behavior." (Heyboer Investigation Notes, RE 19-13, Page ID # 612). Ms. Noel later notified Mr. Heyboer that there was "nothing that really needed to change." *Id.*

13

## C.    Challenge investigates Ms. Noel's claim about her coworkers' jokes.

In January 2023, Mr. Mahle, while joking with TA Specialist Trevor Herr, asked him: "What are you going to do about it?"  Mr. Herr responded, while making a "crying" gesture: "I'm going to go home and cry."  (Plaintiff Deposition Transcript, RE 19-2 at 172:18-25, Page ID # 327).  Ms. Noel overheard this joke, and she later told Mr. Mahle that it offended her and that she believed that Mr. Mahle and Mr. Herr directed their jokes at her. *Id.* at 171:7-172:17, Page ID # 326-327.

Mr. Mahle reported to Ms. Brainard his conversation with Ms. Noel. (Brainard Deposition Transcript, RE 19-4 at 30:22-31:24, Page ID ## 451-452). Ms. Brainard investigated.  (January Investigation File, RE 19-17, Page ID # 625).

Ms. Brainard met with Ms. Noel, who said that she thought Mr. Mahle and Mr. Herr directed their jokes at her because Mr. Mahle "was aware of me filing the [MDCR] charge and stuff, and I feel like they were trying to call me a crybaby in the office because I said something about how I was being treated."  (Plaintiff Deposition Transcript, RE 19-2 at 173:1-174:6, Page  ID ## 328-329; January Investigation File, RE 19-17, Page ID # 626).  But Ms. Noel could not identify any other specific behaviors that she found offensive.  (Brainard Deposition Transcript, RE 19-4 at 35:1-3, Page ID # 456).  Indeed, when Ms. Brainard asked Ms. Noel "how she viewed this as racial and directed at her," Ms. Noel did not answer but instead "asked why I was asking her."  (January Investigation File, RE 19-17,

14

Page ID # 626).  Ms. Noel also said that she had spoken with Mr. Mahle and Mr. Herr and "things [were] fine."  *Id.*

Ms. Brainard also spoke with the other employees that Ms. Noel identified.  She did not find evidence of anything inappropriate, although she "indicated to the gentlemen that they needed to be cautious of the jokes that they were telling[.]"  (Brainard Deposition Transcript, RE 19-4 at 34:13-15, Page ID # 455).

## VI.    CHALLENGE IDENTIFIES DEFICIENCIES IN MS. NOEL'S PERFORMANCE AND PUTS HER ON A PERFORMANCE IMPROVEMENT PLAN.

On Wednesday, March 15, 2023, Ms. Brainard and Mr. Savage gave Ms. Noel her first annual performance review.  They acknowledged that Ms. Noel was "still learning" in the HR Generalist role, but they identified several performance deficiencies.  (Performance Review, RE 19-18, Page ID ## 630, 633).  Specifically:

- Ms. Noel did not timely complete attendance for plant employees covered by collective bargaining agreements: At the time of her review, Ms. Noel had failed to complete more than 136 point notifications and had "not been meeting the requirements associated with the point notifications and follow up with supervision to ensure documents are received and recorded within the CBA guidelines."  Her failures resulted "in missed deadlines and culminate[d] in additional tasks being placed on other team mates to address."  (Performance Review, RE 19-18, Page ID # 630).

- She admitted to Ms. Brainard and Mr. Savage that she missed deadlines for tracking attendance and that her performance needed to improve.

15

(Performance Review Meeting Transcript, RE 19-19 at 25:6-27:20, 29:17-30:18, Page ID ## 664-666, 668-669).

- Although collaboration was essential for HR Generalists, Ms. Noel had "a tendency to avoid high tension situations" and "[shied] away from engaging in meetings both in a group and on an individual basis to receive new ideas, perspectives." (Performance Review, RE 19-18, Page ID ## 631-632).

- Ms. Noel was late to work more than 120 days during her first 12 months of employment (about 60% of the time) and missed 29 days of work during that 12-month period, even though she had only 20 days of PTO. *Id.* at Page ID ## 633-637.

During the meeting, Ms. Brainard and Mr. Savage told Ms. Noel that Challenge had placed her on a Performance Improvement Plan ("PIP"). Challenge did not intend this to be a corrective action; it "value[d] Ms. Noel as an employee" and wanted "to make [her] fully aware of this situation and to assist [her] in improving her performance." (PIP, RE 19-20, Page ID # 747). Ms. Noel refused to sign an acknowledgment that she received the PIP. *Id.*; (Performance Review Meeting Transcript, RE 19-19 at 98:7-99:24, 103:8-15, Page ID ## 737-738, 742). Mr. Savage suggested that she take it home and read it and that the group could reconvene the following day to discuss it. (Performance Review Meeting Transcript, RE 19-19 at 101:18-102:4, Page ID ## 740-741).

## VII. MS. NOEL SUBMITS A REBUTTAL TO HER PERFORMANCE REVIEW.

Ms. Noel was absent from work on March 16 and 17, so she met with Ms. Brainard and Mr. Savage on Monday, March 20. (Second Performance Review

16

Meeting Transcript, RE 19-21 at 2:2-3, 4:1-7, Page ID ## 750, 752). Ms. Noel suggested that she fell behind in tracking attendance because Ms. Brainard did not allow her to work from home on weekends (even though Ms. Noel believed that Ms. Brainard allowed Mr. Mahle to work from home). *Id.* at 24:20-25:19, Page ID ## 772-773. However, Mr. Mahle took work home on his own, without Ms. Brainard or anyone else knowing it. *Id*. at 27:16-19, Page ID # 775. And he took the work home to ensure that Ms. Noel did not fall behind in her work. *Id*. at 26:11-15, Page ID # 774. When she learned of his actions, Ms. Brainard directed Mr. Mahle to stop taking work home and stop working from home. *Id.* at 25:3-26:18, Page ID ## 773-774; (Brainard Deposition Transcript, RE 19-4 at 27:24-28-17, Page ID ## 448-449).

Ms. Brainard, Mr. Savage, and Ms. Noel met twice more to discuss her performance review and PIP (Mr. Heyboer attended the final meeting). (Fourth Performance Review Meeting Transcript, RE 19-23, Page ID ## 845, 851). After the meetings, Challenge amended the PIP in Ms. Noel's favor to reflect that she was tardy only when she was five or more minutes late to work. *Id.* at 16:5-12, Page ID ## 860. Nonetheless, Ms. Noel still refused to sign it. *Id.* at 24:9-11, Page ID # 868.

17

## VIII. MS. NOEL RESIGNS FROM HER EMPLOYMENT WITH CHALLENGE.

Ms. Noel took intermittent FMLA leave in April, May, and June 2023, and a continuous FMLA Leave from July 6 through 31. (FMLA Documentation, RE 19-24, Page ID ## 884-890). On August 1, after being continuously out of work for almost a month, she resigned her employment with Challenge "due to the Hostile Work Environment I have been subjected to and the Discrimination I have endured due to Racism from my manager Cheryl Brainard[.]" (Resignation Letter, RE 19-25, Page ID # 892). Ms. Noel did not report to Challenge any alleged race or sex discrimination or harassment between the final meeting related to her PIP (on March 21) and the day she voluntarily resigned (August 1).

## IX. PROCEDURAL HISTORY.

Ms. Noel asserted that Challenge violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Michigan Elliott-Larsen Civil Rights Act (the "ELCRA") when it allegedly harassed and discriminated against her because of her race and gender and allegedly retaliated against her after she engaged in protected activity. (Complaint, RE 1, Page ID ## 5-14 ).

The district court granted summary judgment for Challenge on August 24, 2025. (Order Granting Defendant's Second Motion for Summary Judgment, RE 27, Page ID # 984). It held that:

18

- Ms. Noel failed to establish a *prima facie* case of sex or race discrimination because she did not prove that she suffered an adverse employment action, (Summary Judgment Hearing Transcript, RE 29 at 39:15-21, Page ID # 1024), and she did not prove that Challenge treated her differently than similarly situated employees, *id.*, at 40:8-9, Page ID # 1025;

- If Ms. Noel could have established her *prima facie* case of race or sex discrimination, her claims would still fail because she could not create a genuine issue of fact to show that Challenge's reasons for its actions were pretextual, *id.*, at 41:3-43:20, Page ID ## 1026-1028;

- Ms. Noel failed to establish a *prima facie* case of retaliation, because Challenge did not subject her to an adverse employment action or constructively discharge her, *id.*, at 44:10-21, and she did not prove a causal connection between her protected activity and the allegedly adverse action, *id.*, at 45:3-23, Page ID # 1030; and

- Ms. Noel failed to establish a *prima facie* case of a hostile work environment, because she did not prove that the events that allegedly supported a hostile work environment were sufficiently severe or pervasive to affect a term, condition, or privilege of employment and Challenge promptly investigated her complaints – *i.e.*, took reasonable care to prevent harassment. *Id.* at 46:14-49:20, Page ID ## 1031-1034.

19

## SUMMARY OF THE ARGUMENT

The district court correctly held that Ms. Noel failed to establish *prima facie* hostile work environment, disparate treatment, and retaliation claims.

## I.   MS. NOEL FAILED TO STATE *PRIMA FACIE* CASES OF RACE AND SEX DISCRIMINATION.

First, Ms. Noel did not prove that Challenge subjected her to an adverse employment action.  The PIP that Challenge issued to Ms. Noel was not an adverse employment action, because "PIPs do not constitute adverse employment actions alone," *Giron v. Tyco Elecs. Corp.*, 762 F. App'x 233, 237 (6th Cir. 2019), and the district court properly concluded that Challenge did not take adverse action against Ms. Noel.  *See* Summary Judgment Hearing Transcript, RE 29 at 39:15-16, Page ID # 1024.  And Challenge did not constructively discharge Ms. Noel, because she had been on leave for almost a month when she voluntarily resigned and her working environment did not force her to quit.  *McKelvey v. Secretary of U.S. Army*, 450 F. App'x 532, 535 (6th Cir. 2011).

Second, although the lack of an adverse employment action is determinative, Ms. Noel also failed to show that Challenge treated her differently than a similarly situated employee outside of her class.  Ms. Noel argues that Mr. Mahle's work from home shows differential treatment.  (Jerreece Noel's Brief on Appeal, p. 24). But the record is undisputed that: Mr. Mahle did not request permission to work from home, (Mahle Deposition Transcript, RE 19-6 at 30:19-22,

20

32:6-13, Page ID ## 544, 546); Ms. Brainard did not know that he worked from home, (Second Performance Review Meeting Transcript, RE 19-21 at 25:3-26:18, Page ID ## 773-774); and as soon as Ms. Brainard learned that he worked from home, she instructed him to stop. (Brainard Deposition Transcript, RE 19-4 at 27:24-28:17, Page ID ## 448-449).

## II.   MS. NOEL FAILED TO STATE A *PRIMA FACIE* CASE OF RETALIATION.

Ms. Noel's retaliation claims fare no better. Again, Challenge did not subject her to an adverse employment action. And even if it had, Ms. Noel presented no evidence to connect her protected activity to the allegedly adverse action. She argues Challenge bided its time between her protected activity and her PIP, waiting for an excuse to materialize to act against her, and that this theory establishes a causal connection between the two. (Jerreece Noel's Brief on Appeal, pp. 18, 30-31). But four months between the two events is insufficient to establish a causal connection, and she has presented no evidence that Challenge was, in fact, lying in wait. Moreover, Ms. Noel's continued poor performance, both before and after she engaged in protected activity, was an intervening legitimate reason that "dispels an inference of retaliation based on temporal proximity." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

21

## III.    CHALLENGE'S LEGITIMATE AND NON-DISCRIMINATORY REASONS FOR ITS ACTIONS WERE NOT A PRETEXT FOR DISCRIMINATION.

First, even if Ms. Noel could state a *prima facie* case for discrimination or retaliation (she cannot), Challenge acted based on Ms. Noel's poor performance, which is a legitimate and non-discriminatory reason.  *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 546 (6th Cir. 2008) (poor performance is a legitimate, non-discriminatory reason).

Second, the district court properly concluded that the PIP was not a pretext for discrimination, because: it was based in fact, (Summary Judgment Hearing Transcript, RE 29 at 41:17-23, Page ID # 1026); Ms. Noel's performance issues were sufficient to warrant a PIP, *id.*, at 41:24-42:8, Page ID ## 1026-1027; and Ms. Noel's performance issues actually motivated the PIP.  *Id.* at 42:9-43:15, Page ID ## 1027-1028.  The district court specifically rejected Ms. Noel's "lying in wait" theory, which she advances again on appeal, because the record supports that Challenge actually declined to discipline Ms. Noel to avoid even the appearance of retaliation.  *Id.* at 42:21-43:4, Page ID ## 1027-1028.

## IV.    MS. NOEL FAILED TO STATE A *PRIMA FACIE* CASE OF A HOSTILE WORK ENVIRONMENT.

First, the district court properly held that Ms. Noel did not meet her *prima facie* burden to show a hostile work environment.  To prove a hostile work environment, Ms. Noel was required to show, *inter alia*, that her work environment

22

was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "Offhand comments and isolated incidents, unless extremely serious, will not amount to a hostile environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The district court properly held that "we have much less than that here." (Summary Judgment Hearing Transcript, RE 29 at 47:22, Page ID # 1032). The few isolated incidents that Ms. Noel identified were not sufficiently severe or pervasive to give rise to a hostile work environment.

Second, the district court properly held that Challenge did not fail to act in response to the alleged hostile work environment. Indeed, the uncontradicted record evidence proves that Challenge investigated each of Ms. Noel's complaints almost immediately after she notified the company about them. *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 686 (6th Cir. 2005) (employer is not liable for alleged hostile work environment where it promptly investigates and takes necessary remedial action).

23

## STANDARD OF REVIEW

The Sixth Circuit reviews the district court's grant of summary judgment *de novo*, using the same Rule 56(c) standard. *Hanover Ins. Co. v. American Engineering Co.*, 33 F.3d 727, 730 (6th Cir. 1994). The Court is not constrained to the district court's analysis but, instead, may affirm on any grounds supported by the record even if different from the reasons provided by the district court. *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007).

## ARGUMENT

### I.    MS. NOEL FAILED TO PROVE A *PRIMA FACIE* CASE OF RACE DISCRIMINATION.

To prove race discrimination, Ms. Noel must show: (1) she is a member of a protected class, (2) she was qualified for the job and performed it satisfactorily, (3) Challenge subjected her to an adverse employment action, and (4) Challenge treated her less favorably than a similarly-situated employee outside of her protected class. *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 514 (6th Cir. 2021). The same elements apply to claims under ELCRA and Section 1981. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (ELCRA); *Smith*, 13 F.4th at 514 (Section 1981).

Ms. Noel did not carry her burden on the third or fourth elements.

24

### A.   Ms. Noel did not suffer an adverse employment action.

An adverse employment action is a "disadvantageous change in an employment term or condition" because of an employer's actions. *Muldrow v. City of St. Louis*, 601 U.S. 346, 347 (2024) (cleaned up).

Ms. Noel argued before the lower court that Challenge took adverse action against her when it subjected her to a PIP and allegedly constructively discharged her. (Plaintiff's Response to Motion for Summary Judgment, RE 23, Page ID ## 956-958). However, she does not argue on appeal that Challenge subjected her to an adverse employment action. Indeed, in the section of her brief devoted to her claim of racial discrimination, Plaintiff does not mention an adverse employment action once. (Jerreece Noel's Brief on Appeal, pp. 16-17, 21-24). She has therefore abandoned this argument. *See Berry v. Experian Information Solutions, Inc.*, 115 F.4th 528, 540 (6th Cir. 2024) ("A party abandons an issue when it fails to present an argument as to that issue on appeal"); *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (an issue is abandoned if a party does not present any argument respecting the issue in her brief); *Preferred Automotive Sales Inc. v. Kocis*, 60 F. App'x. 583 (6th Cir. 2003) (defendant "abandoned his appeal by failing to brief the germane issue[.]").

Nonetheless, the record evidence is clear that Challenge did not subject Plaintiff to an adverse employment action.

25

### 1.    Ms. Noel's PIP was not an adverse action.

Under well-settled Sixth Circuit precedent, "PIPs do not constitute adverse employment actions alone[.]" *Giron*, 762 F. App'x. at 237; *Bacon v. Honda of America Mfg., Inc.*, 192 F. App'x 337, 343 (6th Cir. 2006) (a PIP, on its own, is not an adverse employment action); *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) (Title VII is not "triggered" by every "low evaluation or other action by an employer that makes an employee unhappy or resentful"). Rather, there must be a "disadvantageous" change to Ms. Noel's employment. *Muldrow*, 601 U.S. at 347.

When Challenge issued a PIP to Ms. Noel, it did not reduce her pay or benefits, demote her, issue her a disciplinary or corrective action, or take any other adverse action; rather the PIP was intended to simply improve her performance. (PIP, RE 19-20, Page ID # 747). Nothing about the PIP was adverse to Ms. Noel, and thus it was not an adverse employment action.

### 2.    Challenge did not constructively discharge Ms. Noel.

A voluntary resignation is not an adverse employment action. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 554 (6th Cir. 2008). However, an employer can be liable for such a resignation if the former employee proves that the employer deliberately created intolerable working conditions with the intent of forcing her to quit. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001). Courts consider factors like whether the employer demoted the individual, reduced

26

her salary, reduced job responsibilities, or badgered or humiliated her to encourage her to resign. *Torres v. Chad Youth Enhancement Center*, No. 3:08-CV-0636, 2009 WL 2850709, *2 (M.D. Tenn. Sept. 1, 2009).

The district court correctly held that the evidence showed that Challenge did not take any of the *Torres* actions against Ms. Noel. (Summary Judgment Hearing Transcript, RE 29 at 37:21-40:4, Page ID 1022-1025).

That Ms. Noel resigned after being on leave for almost a month is also dispositive. The key question in analyzing an allegedly constructive discharge is whether "the working environment *at the time of their resignation* forced them to quit." *McKelvey*, 450 F. App'x at 535 (emphasis in original, quotation marks omitted) (quoting *Baughman v. Battered Women, Inc.*, 211 F. App'x 432, 440 (6th Cir. 2006)). Ms. Noel argued before the district court that Challenge constructively discharged her because she "was ostracized and called a 'crybaby' by her coworkers" and Challenge "failed to remedy" this alleged mistreatment. (Plaintiff's Response to Motion for Summary Judgment, RE 23, Page ID # 953; Summary Judgment Hearing Transcript, RE 29 at 15:22-16:3, Page ID ## 1000-1001). However, the "crybaby" incident occurred in January 2023 – almost eight months before Ms. Noel resigned on August 1, 2023. In other words, nothing about Ms. Noel's work environment at the time of her resignation was "so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to

27

resign." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008).

Ms. Noel changed her argument on appeal. She now argues that Challenge constructively discharged her because it "continually harassed, badgered, and humiliated," specifically when her supervisor played a song in the office with the lyrics "these boots were made for walking" and when leadership suggested weekly meetings to ensure she stayed on track with her PIP. (Jerreece Noel's Brief on Appeal, pp. 38-39). Ms. Noel did not raise these arguments at summary judgment before the district court. (Response to Motion for Summary Judgment, RE 23, Page ID ## 957, 961). Therefore, they are not properly before this Court. *See Cash-Darling v. Recycling Equipment, Inc.*, 62 F.4th 969, 976 (6th Cir. 2023) (Sixth Circuit must review the cases presented to the district court and not a better case fashioned after an unfavorable order); *Bormuth v. Jackson Cty.*, 870 F.3d 494, 499-500 (6th Cir. 2017) (en banc) (court will not consider facts that were not referenced in opposition to a motion for summary judgment). And even if the Court considers these alleged incidents, they suffer from the same fatal timing flaw – *i.e.* Ms. Noel cannot prove she "left within a reasonable time after last being the subject of discrimination." *McKelvey*, 450 F. App'x 535-36 (quoting *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 167 (1st Cir. 1991)).

28

## II.    MS. NOEL FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF GENDER DISCRIMINATION.

To carry her *prima facie* burden, Ms. Noel must show: (1) she is a member of a protected class; (2) she was qualified for her position; (3) Challenge subjected her to an adverse employment action; and (4) she was treated differently than similarly-situated male employees for the same or similar conduct. *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *Harrison v. Olde Fin. Corp.*, 572 N.W.2d 679, 681 (1997).

As explained above, Ms. Noel cannot prove the third element, because she did not suffer an adverse employment action. *See* discussion *supra* Argument Part I.A.  The district court agreed.  (Summary Judgment Hearing Transcript, RE 29 at 37:2-3, Page ID #1022) (analyzing Ms. Noel's race-and-gender-based discrimination claims together).

Ms. Noel also cannot prove the fourth element, because there is no evidence that Challenge treated her worse than similarly situated male employees. On appeal, she argues that the district court "improperly determined that [Ms. Noel] and . . . Jackson Mahle, were not 'similarly situated.'"  (Jerrece Noel's Brief on Appeal, p. 32).  She is wrong.  Instead, the district court held that Challenge did not *treat* Mr. Mahle differently than Ms. Noel – not that they were not similarly-situated. *See* Summary Judgment Hearing Transcript, RE 29 at 40:8-9, Page ID # 1025 ("Noel

29

has also not demonstrated that she was treated differently than similarly situated employees.").

Indeed, the undisputed evidence proves that Challenge did not treat Ms. Noel differently than Mr. Mahle.  Mr. Mahle took his computer home on his own accord, without asking Challenge for permission.  (Mahle Deposition Transcript, RE 19-6 at 30:19-22, 32:6-13, Page ID ## 544, 546).  As soon as Challenge learned that Mr. Mahle worked from home, it instructed him to stop.  (Brainard Deposition Transcript, RE 19-4 at 27:24-28:17, Page ID ## 448-449).  Even Ms. Noel admitted that she does not have any evidence to contradict these facts.  *See* Plaintiff Deposition Transcript, RE 19-2 at 207:19-22, Page ID # 362 (Ms. Noel testified that she did not know whether Challenge allowed Mr. Mahle to take his computer home).

Finally, Ms. Noel cannot show that Challenge treated similarly situated employees differently because the undisputed evidence proves that, when she requested to take her computer home on the weekends, ***Challenge granted her request***.  (Second Performance Review Meeting Transcript, RE 19-21 at 33:4-19, Page ID # 781).

## III.   MS. NOEL FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION.

To establish a *prima facie* retaliation claim, Ms. Noel must show that: (1) she engaged in protected activity; (2) Challenge knew about her protected activity; (3) Challenge took adverse action against her; and (4) a causal connection

30

between the protected activity and adverse action exists. *Laster*, 746 F.3d at 730. Retaliation claims under Section 1981, ELCRA, and Title VII use the same framework. *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (Section 1981 and Title VII); *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013) (ELCRA and Title VII). Ms. Noel did not carry her burden with respect to the third and fourth elements. The district court agreed. (Summary Judgment Hearing Transcript, RE 29 at 44:10-45:23, Page ID ## 1029-1030).

### A. Ms. Noel did not establish an adverse employment action.

A PIP, without more, is not an adverse employment action. *See* discussion *supra* Argument Part I.A.1. Similarly, a lower performance evaluation is not an adverse employment action for the purposes of a retaliation claim unless it "significantly impact[s] an employee's wages or professional development." *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 433 (6th Cir. 2007); *see also Kienzle v. Gen. Motors, LLC*, 903 F. Supp.2d 532, 551 (E.D. Mich. 2012) ("unflattering performance review" was not adverse employment action where no "consequences flowed from the review"). Neither Ms. Noel's performance review nor her PIP subjected her to an adverse action, because they did not affect her wages, benefits, or professional development, let alone materially impact them. (Summary Judgment Hearing Transcript, RE 29 at 38:8-19, Page ID # 1023).

31

**B.    Ms. Noel did not establish a causal connection between any alleged adverse action and her protected activity.**

Taking the facts in the light most favorable to Ms. Noel, she last engaged in protected activity on March 20, 2023, when she submitted her rebuttal to her performance review. (Response to Performance Review, RE 19-22, Page ID ## 839-843). There is no evidence linking that protected activity to her voluntary resignation. And the more than four months between the two events is insufficient to establish a causal connection. *See Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Plaintiff was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation"); *Simmons v. Augustine*, No. 08-CV-14546, 2009 WL 2222693, at *8 n.12 (E.D. Mich. July 22, 2009) (citing cases that hold that four months is "insufficient temporal proximity to infer a causal connection").

Even so, Ms. Noel argues that the district court ignored the evidence that Challenge was "lying in wait" to give her a retaliatory negative performance review and PIP. (Jerreece Noel's Brief on Appeal, p. 29). But the "lying in wait" theory goes to whether Challenge's legitimate and non-discriminatory reasons for acting are a pretext, not to Ms. Noel's *prima facie* case and her inability to establish it.[1] *See Hamilton v. General Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009) ("when

---

[1] Moreover, the cases that Ms. Noel cites have nothing to do with the "lying in wait" theory. Although she references *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516

32

an employer waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee, the employer's actions constitute the very definition of *pretext*") (cleaned up and emphasis added).  Ms. Noel failed to first carry her *prima facie* burden.

Moreover, the record flatly contradicts Ms. Noel's argument, because Mr. Heyboer instructed Ms. Brainard not to discipline Ms. Noel for excessive absences and tardies after Ms. Noel filed an EEOC charge.  (Brainard Deposition Transcript, RE 19-4 at 36:11-23, Page ID # 457).  The district court properly considered Ms. Noel's argument – addressing the pretext argument for the sake of the record – and rejected it, because Ms. Noel provided no record evidence to support it.  *Id.*

## IV.  MS. NOEL FAILED TO ESTABLISH THAT CHALLENGE'S LEGITIMATE, NON-DISCRIMINATORY REASONS FOR ITS ACTIONS WERE PRETEXT FOR DISCRIMINATION AND RETALIATION.

Even if Ms. Noel had carried her *prima facie* burden, Challenge's actions were based on legitimate, non-discriminatory reasons: Ms. Noel's poor

---

(6th Cir. 2008), and *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497 (6th Cir. 2014), to support her position, they do not.  In both cases, temporal proximity alone sufficed to establish a *prima facie* case of causation, because, in those cases, the retaliatory conduct occurred on the same day or within one day after the employers learned of the employees' protected activities.  Those cases are inapposite because, here, Ms. Noel claims that Challenge *bided its time* before it retaliated against her.

performance and poor attendance. *See* discussion *supra* Statement of Facts Part VI; *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d at 546 ("Poor performance is a legitimate, nondiscriminatory reason"); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 528 (6th Cir. 2015) (excessive absenteeism and tardiness were legitimate non-discriminatory reasons for employment actions).

Thus, for her claims to survive, Ms. Noel must prove that Challenge's legitimate non-discriminatory reasons were pretextual. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 569 (6th Cir. 2023). Non-discriminatory reasons are a pretext when they (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012).[2] Ms. Noel did not carry this burden.

First, Challenge's reasons are based in fact. Ms. Noel admitted that she missed deadlines for tracking attendance and that her performance needed improvement. (Performance Review Meeting Transcript, RE 19-19 at 25:6-27:20,

---

[2] Regarding Ms. Noel's claims under the ELCRA, she was required to rebut Challenge's legitimate, non-discriminatory reason for its conduct under a "pretext plus" standard. *Lytle v. Malady*, 579 N.W.2d 906 (Mich. 1998). The analysis includes two prongs. First, the plaintiff must disprove the employer's articulated explanation for an adverse employment action. Second, however, that disproof defeats summary judgment only if it also raises a triable issue that discriminatory animus was a motivating factor for the action. *Id.* And "mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (citation omitted).

29:17-30:18, Page ID ## 664-666, 668-669; Summary Judgment Hearing Transcript, RE 29 at 41:17-23).  And although she disputed Challenge's calculation of her tardies, she provided no evidence that contests Challenge's log of her card swipes that show when she entered the Pontiac plant.  (Summary Judgment Hearing Transcript, RE 29 at 41:22-23, Page ID # 1026).

Second, Ms. Noel's poor performance and attendance actually motivated her performance evaluation and PIP.  Challenge met with Ms. Noel about her performance and attendance, and these issues were sufficient to justify her performance rating and PIP.  Ms. Noel did not provide evidence to put the issue into question.  *See id.* at 42:9-20, Page ID # 1027 (Ms. Noel "does not support her argument with citations to the record and makes inaccurate citations to the law . . . [S]he does not provide a single citation to the record of what that [substantial evidence of pretext] might be.").  To the extent that Ms. Noel offers on appeal new arguments based on other facts, it is too little too late.  *See Cash-Darling v. Recycling Equipment, Inc.*, 62 F.4th at 976.

Third, there is no basis in the record for Ms. Noel to argue that her admitted poor performance and her poor attendance were insufficient to justify her evaluation and the PIP.  These were repeated issues that Ms. Noel failed to correct.  (Summary Judgment Hearing Transcript, RE 29 at 41:24-42:8, Page ID ## 1026-1027).

35

## V.   MS. NOEL FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF A RACIALLY HOSTILE WORK ENVIRONMENT.

To prove a racially hostile work environment Ms. Noel must establish: (1) she belongs to a protected class; (2) Challenge subjected her to unwelcome harassment; (3) the harassment was based on her race; (4) the alleged harassment affected a term, condition, or privilege of her employment; and (5) Challenge knew or should have known about the harassment and failed to take action. *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017). The district court properly held that she did not carry her burden.

### A.   Ms. Noel did not show that any alleged harassment was race-based.

To show that the alleged harassment was based on her race, Ms. Noel must point to the use of race-specific and derogatory terms or offer "direct comparative evidence about how the alleged harasser treated members of other races." *Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021). She "must always prove that the conduct at issue was not merely tinged with offensive [racial] connotations, but actually constituted *discrimination* because of [race]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (cleaned up).

In her brief on appeal, Ms. Noel lists nine "issues" that she "experienced" that form the basis of her alleged hostile work environment. None of these "issues" include the use of race-specific and derogatory terms. (Jerreece

36

Noel's Brief on Appeal, p. 26).  Ms. Noel therefore must offer direct evidence of how Ms. Brainard treated members of other races.  *Strickland*, *supra*.  She does not.

Ms. Noel's first, third, fourth, fifth, sixth, seventh, eighth, and ninth "issues," *see* Jerreece Noel's Brief on Appeal, pp.  26-27, are irrelevant to this analysis, because they either do not involve Ms. Brainard (issue 6) or Ms. Noel's race (reasons 1, 3, 4, 5, 7, 8, and 9).  That leaves her second "issue," that Ms. Brainard sent her home from a job fair because of her race.  (Jerreece Noel's Brief on Appeal, p. 22-23).  This does not support Ms. Noel's claim for a racially hostile work environment.  It is undisputed that Ms. Brainard had nothing to do with the photographer at the job fair and that Challenge's *corporate office* in Grand Rapids, Michigan, hired the photographer to appear at the job fair attended by the *Pontiac office's* employees.  (Plaintiff Deposition Transcript, RE 19-2 at 66:10-13, Page ID # 221; Brainard Deposition Transcript, RE 19-4 at 17:16-18:11, Page ID ## 438-439).  Plaintiff's counsel *conceded this exact point* at oral argument.  (Summary Judgment Hearing Transcript, RE 29 at 18:23-19:19, Page ID # 1003-1004).

### B.    Ms. Noel did not show that the allegedly hostile work environment was objectively hostile.

A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Forklift Sys., Inc.*, 510 U.S. at 21.  To succeed, Ms. Noel

37

must show that the work environment was subjectively and objectively hostile – *i.e.*, "that the plaintiff not only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016). In assessing objective hostility, courts examine "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (quoting *Forklift Sys., Inc.*, 510 U.S. at 21) (cleaned up).

Ms. Noel cited at summary judgment several independent events that, she argues, collectively show that Challenge subjected her to a hostile work environment. (Summary Judgment Hearing Transcript, RE 29 at 21:3-16, Page ID # 1006; Response to Motion for Summary Judgment, RE 23, Page ID ## 958-959). However, that these events support a hostile work environment is based on little more than Ms. Noel's subjective feelings. *See* Summary Judgment Hearing Transcript, RE 29 at 23:15-20 ("We've presented facts of situations where Ms. Noel felt that she was being ostracized and singled out because she was Black . . . It's my position that that should be left up to the jury to decide."). There is no evidence that could support a reasonable person finding that Challenge subjected her to a hostile work environment. *See Phillips v. UAW Int'l*, 854 F.3d at 327 ("Occasional

38

offensive utterances do not rise to the level required to create a hostile work environment because, to hold otherwise would risk changing Title VII into a code of workplace civility.") (cleaned up).

### 1. Ms. Brainard's offer to allow Ms. Noel to leave the job fair early is not objectively hostile.

First, Ms. Noel argued that Ms. Brainard sent her home from the job fair to exclude her from a group picture later taken at the event. (Summary Judgment Hearing Transcript, RE 29 at 16:4-7, 19:6-19, 21:11-16, Page ID # 1001, 1004, 1006). Ms. Noel does not point to any evidence in the record that supports this subjective belief. Indeed, she admits in her brief on appeal that "her supervisor sent her home before a photo shoot because *she believed* Defendant did not want an African American woman in the photos." (Jerreece Noel's Brief on Appeal, p. 22) (emphasis added).

Instead, the undisputed evidence proves that Ms. Brainard did not know that Challenge's corporate office scheduled a photographer for the work event. (Plaintiff Deposition Transcript, RE 19-2 at 66:10-13, Page ID # 221; Brainard Deposition Transcript, RE 19-4 at 17:16-18:11, Page ID ## 438-439). Even so, Challenge's photographer took a photograph of a Challenge employee with the hotel manager, *who was a Black woman*. (Job Fair Photograph, RE 19-7, Page ID # 585). And Ms. Noel's counsel conceded at oral argument before the district court that there is nothing in the record to rebut Challenge's position that Ms. Brainard did not know

a photographer had been hired.  (Summary Judgment Hearing Transcript, RE 29, Page ID # 1003-1004).  Ms. Noel's argument on appeal is frivolous, and the district court's decision should be affirmed.  *See Dubay v. Wells*, 506 F.3d 422, 433 (6th Cir. 2007) (appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit."); *Tareco Properties, Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003) ("An appeal is frivolous when the appellant's arguments essentially had no reasonable expectation of altering the district court's judgment based on law or fact." (cleaned up)).

> **2.    Ms. Brainard's alleged directive to not hire applicants from Pontiac is not objectively hostile.**

Second, Ms. Noel argued that she was subjected to an objectively hostile work environment when Ms. Brainard instructed her to not hire applicants from Pontiac, Michigan.  (Plaintiff's Response to Motion for Summary Judgment, RE 23, Page ID #952).  This argument, too, is based on nothing more than Plaintiff's "***understanding*** that [Ms. Brainard] refused to hire Black applicants from Pontiac." (Jerreece Noel's Brief on Appeal, p. 26) (emphasis added).  It is not based on evidence.  *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.")

Ms. Noel did not even attempt to point to evidence of Pontiac's racial demographics or any other evidence that could support her subjective beliefs.

40

Instead, she admits that Ms. Brainard said that "she didn't want to hire people from Pontiac because . . . she was just trying to get . . . like different candidates" and that Ms. Brainard gave Ms. Noel resumes from people from outside of Pontiac with whom Ms. Brainard had a pre-existing relationship. (Plaintiff Deposition Transcript, RE 19-2 at 94:2-95:13). Ms. Brainard's advocating for people with whom she had a relationship is hardly evidence from which an objective person could conclude that she created an objectively hostile work environment.

### 3. Ms. Brainard's yelling at Ms. Noel was not objectively hostile.

Third, Ms. Noel argued that Challenge subjected her to an objectively hostile work environment when Ms. Brainard yelled at her. (Plaintiff's Response to Motion for Summary Judgment, RE 23, Page ID ## 958-959). When considered in the light most favorable to Ms. Noel, Ms. Brainard's yelling is one isolated, non-threatening incident over the course of a 17-month employment that no reasonable person could conclude was objectively hostile. *Batuyong v. Gates*, 337 F. App'x 451 (6th Cir. 2009) (multiple occasions during which supervisor "raised his voice, inappropriately, became verbally abusive, and chastised [plaintiff] in front of others" did not establish objectively hostile work environment); *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002) (no severe or pervasive hostile work environment found where employee was accosted by her supervisor on several occasions,

41

including one incident during which supervisor explicitly referenced employee's disability).

> **4.    Challenge did not subject Ms. Noel to an objectively hostile workplace when it initially denied her request to work remotely.**

Fourth, Ms. Noel argued that Challenge's refusal to allow her to work remotely was objectively hostile. (Summary Judgment Hearing Transcript, RE 29 at 14:3-23, 21:11-16, Page ID # 999, 1006). Not only does Ms. Noel not point to any evidence in the record to support her argument, but the facts directly refute it.

The undisputed facts prove that: (1) Challenge did not know that Mr. Mahle worked from home to complete Ms. Noel's point notification work; (2) Challenge stopped Mr. Mahle from working at home immediately after it discovered his actions; and (3) Challenge ultimately offered Ms. Noel the opportunity to work from home on weekends. (Second Performance Review Meeting Transcript, RE 19-21 at 25:3-28:2, 30:9-33:18, Page ID ## 773-775, 778-781; Brainard Deposition Transcript, RE 19-4 at 27:24-28:23, Page ID ## 448-449). Based on the totality of the circumstances, the work from home issue did not make Ms. Noel's work environment objectively hostile.

**5.    Ms. Noel's coworkers did not create a subjectively or objectively hostile work environment when they made a joke in her presence.**

Fifth, Ms. Noel argued that her co-workers made "mocking remarks" toward her, calling her a "crybaby." (Summary Judgment Hearing Transcript, RE 29 at 15:17-20, 21:11-16, Page ID # 1000, 1006).  She argues on appeal that "when [she was] called a 'crybaby' in the context of filing a civil rights charge, the term takes on a specific, retaliatory, and demeaning meaning" that was "an attempt to shame [her] into silence." (Jerreece Noel's Brief on Appeal, p. 26).  Her argument ignores her admission to Mr. Savage and Ms. Brainard that she thought her relationship with her coworkers was "good" and that they "laughed and joked in the office sometimes," which strongly suggests that she did not subjectively believe in the moment that the joke created a hostile work environment.  *See* Reply in Support of Motion for Summary Judgment, RE 25, Page ID ## 974-975.

Even so, Ms. Noel's argument suffers from the same deficit as her others – *i.e.*, she points to no evidence that the coworkers' joke was objectively offensive.  That she requests that the Court blindly agree with her, presumably because she now characterizes the joke as "socially ostraciz[ing] her," is insufficient to overcome her summary judgment burden.  *See* Fed. R. Civ. P. 56(c) (a party must properly support an assertion by citing to particular parts of the record).

43

**6.    The district court properly considered the totality of the alleged hostile acts.**

Ms. Noel argues that the district court "dissect[ed] each incident of harassment [and] individually stripped them of their collective power and contextual significance."    (Jerreece Noel's Brief on Appeal, p. 27).    Her argument mischaracterizes the district court's opinion and does not support reversal.

A court must consider all the circumstances when determining whether an actionable hostile work environment exists. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563-64 (6th Cir. 1999).    The opinion below, however, reflects that the district court considered the combined effect of each incident alleged.    For example, the court framed its analysis by confirming that it needed to "combine all these other things[.]"    (Summary Judgment Hearing Transcript, RE 29 at 22:19-22, Page ID # 1007).    The court described the incidents separately, considered them in the light most favorable to Ms. Noel, and concluded that "[u]nder the governing case law, this [collective] conduct simply does not rise to the level of a racially hostile work environment."    *Id.* at 46:14-20, Page ID # 1031; *see also Frier-Heckler v. McDonough*, No. 22-3233, 2023 WL 2378507, at *5 (6th Cir. Mar. 7, 2023) (analyzing a similar district court opinion and rejecting the appellant's argument that the district court improperly disaggregated her claims and did not consider them together).

44

## C. The allegedly hostile environment was neither severe nor pervasive.

The bar to show a severe or pervasive hostile work environment is high. For example, in *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502 (6th Cir. 2011), this Court held that "despicable . . . insensitive, ignorant, and bigoted" racist statements were not sufficient to create an issue of fact on the plaintiff's hostile work environment claim, because they were isolated and not "sufficiently severe." *Id*. at 513.

Ms. Noel alleges that Challenge subjected her to a hostile work environment because over a 17-month period, the company sent her home early from a job fair, her supervisor yelled at her, two co-workers made a crybaby joke near her, and her supervisor instructed her to not hire candidates from Pontiac. (Jerreece Noel's Brief on Appeal, p. 26). Even when taken in the light most favorable to Ms. Noel, nothing about these allegations is despicable, insensitive, ignorant, bigoted, or racist. They were, at best, "isolated incidents" *Faragher*, 524 U.S. at 788, or "[o]ccasional offensive utterances[.]" *Williams*, 643 F.3d at 512. "To hold otherwise would risk changing Title VII into a code of workplace civility, a result we have previously rejected." *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008). *See also Clay v. United Parcel Serv., Inc.*, 501 F.3d 695 (6th Cir. 2007) (fifteen racially-motivated comments over the span of two years were not sufficiently pervasive to give rise to hostile work environment claim); *Smith v. Leggett Wire Co.*,

45

220 F.3d 752 (6th Cir. 2000) (one racial slur directed at plaintiff, racially offensive and obscene cartoon circulated in workplace, and reference to African-American employee as "gorilla" were not sufficiently severe or pervasive).

Finally, Ms. Noel argues that the district court erred by holding her to the wrong standard. She claims that the district court required her to make a severe *and* pervasive showing, not a severe *or* pervasive showing. (Jerreece Noel's Brief on Appeal, p. 25). Although the district court twice during oral argument referred to the standard as "severe and pervasive," (Summary Judgment Hearing Transcript, RE 29 at 21:3-19, Page ID # 1006), it properly referred to and applied the "severe or pervasive" authority in its ruling and opinion. *Id.* at 46:21-24, 47:22-25, Page ID ## 1031-1032.

## D. There is no genuine issue of fact that Challenge promptly investigated Ms. Noel's complaints of harassment.

Challenge is not liable for harassment if it (1) exercised reasonable care to prevent and correct any harassing behavior; and (2) Ms. Noel unreasonably failed to take advantage of the preventative or corrective opportunities. *Wyatt v. Nissan North America, Inc.*, 999 F.3d 400, 412 (6th Cir. 2021).

First, Challenge exercised reasonable care to prevent harassing behavior because it disseminated and publicized a reasonable anti-harassment policy that is effective in practice. *Id*. at 413-14; Handbook Anti-Harassment Policy, RE 19-26, Page ID ## 900-901. An effective policy (1) requires supervisors to report

46

incidents of harassment; (2) permits informal and formal complaints of harassment; (3) provides a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provides training regarding the policy. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 349-50 (6th Cir. 2005). Challenge's salaried employee handbook policies: require supervisors to notify their superiors of an instance of discrimination or harassment; permit all complaints of harassment and do not limit complaints to a certain form or format; and allow employees to report harassment to Human Resources or the Company President, bypassing employees' supervisors. (Handbook Anti-Harassment Policy, RE 19-26, Page ID ## 900-901). The Company also maintains a "Team Member Hotline" for employees to make a report directly to Challenge's Corporate Human Resources Department. *Id.*, Page ID ## 895, 936.

Second, Challenge investigated Ms. Noel's complaints immediately after she notified the company about them:

| Complaint | Response |
|---|---|
| July 1, 2022: Ms. Noel emails Mr. Savage and complains about "unfair treatment." (July Complaint, RE 19-8, Page ID ## 589-590). | Mr. Savage replied within 45 minutes and promised to investigate after the holiday weekend. (July Complaint, RE 19-8, Page ID # 588). |
| November 4, 2022: Ms. Noel complains that Ms. Brainard yelled at her. (November Complaint, RE 19-14, Page ID # 614). | November 9: Mr. Heyboer went to Pontiac to investigate. (Heyboer Investigation Notes, RE 19-13, Page ID # 611). |

47

| Complaint | Response |
|---|---|
| December 13, 2022: Ms. Noel emails Mr. Heyboer that Ms. Brainard has treated her unfairly and discriminated against her because of her race. (December Complaint, RE 19-16, Page ID ## 619-620). | December 16: Mr. Heyboer responded to Ms. Noel.<br><br>December 22: Mr. Heyboer meets with Ms. Noel.<br><br>December 28: Mr. Heyboer meets with other employees identified by Ms. Noel.<br><br>(Heyboer Investigation Notes, RE 19-13, Page ID ## 611-612). |
| January 2023: Ms. Brainard learns that Ms. Noel complained to Mr. Mahle about his jokes.  (Brainard Deposition Transcript, RE 19-4 at 30:22-31:24, Page ID ## 451-452). | Ms. Brainard immediately conducts interviews and investigates the allegations.  (Plaintiff Deposition Transcript, RE 19-2 at 173:1-174:6, Page ID ## 328-329; January Investigation File, RE 19-17, Page ID # 626). |

"The most significant immediate measure an employer can take in response to a . . . harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Collette v. Stein-Mart, Inc.*, 126 F. App'x at 686 (quoting *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001)); s*ee also Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) ("Generally, a response is adequate if it is reasonably calculated to end the harassment."). Ms. Noel has never attempted to explain how Challenge's response was inadequate. Challenge is therefore entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Challenge requests that the Court affirm the district court's grant of summary judgment to Challenge on all counts.

MILLER JOHNSON
Attorneys for Challenge Mfg. Holdings, Inc.


Date: March 4, 2026

/s/ *Adam J. Walker*
Matthew M. O'Rourke
Adam J. Walker
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI 49503
orourkem@millerjohnson.com
walkera@millerjohnson.com
(616) 831-1700

49

## <u>CERTIFICATE OF COMPLIANCE</u>

Appellee's counsel states under Fed. R. App. P. 32(g) that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document was prepared using a proportionally-spaced typeface in Microsoft Word for Microsoft 365 MSO in Times New Roman 14-point font.

Appellee's counsel further states under Fed R. App. P. 32(g) that this document also complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this document contains 10,832 words, exclusive of those words not counted under Rule 32(f).

Date: March 4, 2026                              /s/ *Adam J. Walker*
                                                 Adam J. Walker

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing document was served upon all parties of record by the March 4, 2026 filing of the document through the CM/ECF filing system, and that such service was made electronically upon each counsel of record so registered with the Sixth Circuit Court of Appeals.


Date: March 4, 2026                                    /s/ *Adam J. Walker*
                                                                         Adam J. Walker

# ADDENDUM

## Appellee's Designation of Relevant District Court Documents

| District Court Record Entry No. | Date | Description | Page ID Range |
|---|---|---|---|
| | | | |
| 1 | 11/22/2023 | Complaint | 1-15 |
| 19 | 01/21/2025 | Defendant's Motion for Summary Judgment and Brief in Support | 114-149 |
| 19-2 | 01/21/2025 | Plaintiff Deposition Transcript | 156-413 |
| 19-3 | 01/21/2025 | New Hire Offer Letter | 415-419 |
| 19-4 | 01/21/2025 | Brainard Deposition Transcript | 421-477 |
| 19-5 | 01/21/2025 | Kote Deposition Transcript | 479-512 |
| 19-6 | 01/21/2025 | Mahle Deposition Transcript | 514-583 |
| 19-7 | 01/21/2025 | Job Fair Photograph | 585 |
| 19-8 | 01/21/2025 | July Complaint | 587-591 |
| 19-9 | 01/21/2025 | Savage Declaration | 593-596 |
| 19-10 | 01/21/2025 | Time Swipe Logs | 598-603 |
| 19-11 | 01/21/2025 | Promotion Acceptance | 605 |
| 19-12 | 01/21/2025 | Promotion Letter | 607-609 |
| 19-13 | 01/21/2025 | Heyboer Investigation Notes | 611-612 |
| 19-14 | 01/21/2025 | November Complaint | 614-615 |
| 19-15 | 01/21/2025 | Office Map | 617 |
| 19-16 | 01/21/2025 | December Complaint | 619-620 |
| 19-17 | 01/21/2025 | January Investigation File | 622-626 |
| 19-18 | 01/21/2025 | Performance Review | 628-638 |
| 19-19 | 01/21/2025 | Performance Review Meeting Transcript | 640-745 |
| 19-20 | 01/21/2025 | PIP | 747 |
| 19-21 | 01/21/2025 | Second Performance Review Meeting Transcript | 749-837 |
| 19-22 | 01/21/2025 | Response to Performance Review | 839-843 |
| 19-23 | 01/21/2025 | Fourth Performance Review Meeting Transcript | 845-878 |

Note: The table has a spanning header row: **Case No. 2:23-cv-12982 / District Court for the Eastern District of Michigan**

| 19-24 | 01/21/2025 | FMLA Documentation | 880-890 |
|-------|------------|--------------------|---------|
| 19-25 | 01/21/2025 | Resignation Letter | 892 |
| 19-26 | 01/21/2025 | Handbook Anti-Harassment Policy | 894-936 |
| 23 | 02/18/2025 | Plaintiff's Response to Motion for Summary Judgment | 947-967 |
| 25 | 03/04/2025 | Reply in Support of Motion for Summary Judgment | 970-979 |
| 27 | 07/29/2025 | Order Granting Defendant's Second Motion for Summary Judgment | 984 |
| 29 | 08/24/2025 | Summary Judgment Hearing Transcript | 986-1036 |